# Diehl *v.* Diehl, Appellant.

### *Divorce—Adultery—Evidence—Sufficiency.*

Where in an action for divorce on the ground of adultery, the case, as to its direct or material evidence, stood on the testimony of two detectives who were employed to secure evidence to sustain the libellant's case, and that testimony was contradicted by the respondent and a number of her witnesses, the libel will be dismissed.

The testimony of private detectives who are employed to produce results in divorce cases should be carefully scrutinized.

Evidence to sustain a charge of adultery should be direct and clear. It is not requisite that the actual fact of adultery be proved, but the testimony must be of such a clear and convincing character as to leave no other conclusion in the mind of a reasonable person.

The proximity of rooms in hotels and boarding houses does not

warrant an inference of meretricious relations between a man and woman who are acquaintances and who occupy contiguous rooms.

Argued October 20, 1925. Appeal No. 194, October T., 1925, by respondent, from decree of C. P. No. 5, Philadelphia County, September T., 1923, No. 131, in the case of Frederick Diehl v. Jennie C. Diehl. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Libel in divorce. Before the court in banc.

The facts are stated in the opinion of the Superior Court.

The case was referred to Edward Merchant, Esq., as master, who recommended that a divorce should be granted. On exceptions to the Master's report the court dismissed the exceptions and granted a divorce. Respondent appealed.

*Error assigned* was the decree of the court.

*F. Carroll Fow,* for appellant.

*William T. Connor,* and with him *John R. K. Scott,* for appellee.

OPINION BY HENDERSON, J., February 26, 1926:

The record in this case is contained in 464 pages, a large part of which consists of inconsequential testimony. The cause for divorce is adultery. It appears from the evidence that the libellant had lived apart from his wife for nearly three years; that he had instituted a proceeding for divorce on the ground of cruel and intolerable treatment, but had failed to secure a decree; that a proceeding was brought in the Court of Quarter Sessions to compel him to contribute to his wife's support, and that an order was in force against him for the payment to her of $20 a

week. On the 6th of August, 1923, the libellant insti-
tuted a prosecution for adultery against the defendant
at Atlantic City alleging in the complaint that on or
about the 28th of July, 1923, and divers other dates
at Atlantic City, she committed adultery with one
William Ormond. A warrant was issued on this com-
plaint and under the direction of a colored detective,
a constable, to whom the warrant was issued, went to
the hotel or boarding house where the respondent had
been living for some time, and at about four o'clock in
the morning went to her room and that of Ormond ad-
joining it for the purpose of arresting Mrs. Diehl.
She was not in the hotel, but Ormond was in his room
and was arrested. Mrs. Diehl subsequently appeared
at the magistrate's office and gave bail. The case
was not prosecuted in court and the defendants were
discharged. The libellant, some time before the is-
suing of the warrant, had employed a colored detective
in Atlantic City to procure evidence to sustain a pro-
ceeding for divorce. This detective employed two
other detectives, a man named Olwell and his wife,
the latter of whom testified that she went to the hotel
where Mrs. Diehl was staying and remained in and
about the hotel for a week. She testified that she was
employed by Thorp, the colored man, to watch Mrs.
Diehl; that she had a room on the third floor; that she
was in the hotel on the second floor on which Mrs. Diehl
had a room; that she was in Mrs. Diehl's room on one
occasion, and that she saw Ormond in Mrs. Diehl's
room partly undressed; that she saw Ormond and Mrs.
Diehl go into the bathroom, used by guests of the hotel,
in their bathing suits and remain some time; that she
saw the respondent and Ormond on the beach with
other people and that Mrs. Diehl patted Ormond on
the back and said: "You're getting tanned, dear."
This was in the presence of friends of Mrs. Diehl and
Ormond. She testified that she saw a suit of man's
under garments on a line in Mrs. Diehl's room and

handkerchiefs and socks and a man's bathing suit and that Ormond was sitting in the room at breakfast in his underclothes, and that when he saw her he ran into his room and locked the door. The witness went to the house on the 30th of July and remained a week and the occurrence of the examination of Mrs. Diehl's room was on the first of August. Mrs. Olwell's husband testified to observations made by him from the bathroom of another hotel; he was not a guest there, but said he had obtained permission to make observations from the bathroom and was in the bathroom several times during the period referred to by his wife; that he saw a man going from the room occupied by Ormond in the Weber house through to Mrs. Diehl's room, and that he afterward recognized him as Ormond. There was evidence that Ormond and Mrs. Diehl were acquaintances; that they had met at the house of friends on social occasions, and that Ormond had taken some part as a representative of Mrs. Diehl's attorney for whom he, Ormond, was working in the proceeding in which the libellant was held to bail for support. The testimony showed that Ormond and the respondent had dined together occasionally and that they were on the beach with other friends at times. A considerable part of the evidence was directed to the social relations of the respondent and Ormond and a number of her witnesses, but the case, as to its direct or material evidence, stands on the testimony of the two detectives, and that evidence is contradicted in practically all of its various parts by the respondent, Mrs. Diehl, Ormond, and ten or twelve other witnesses, the latter of whom referred to different parts of the testimony of the detectives. There is a direct contradiction of Mrs. Olwell by three witnesses as to the presence of Ormond at the hotel at the time she says she was there. Three or four witnesses testified that Ormond was not in Atlantic City on July 30th and 31st, but that he was in Philadelphia. There was direct evidence in corroboration of the de-

fendant that Mrs. Cowperthwaite was with her and occupied her room with her from July 29th to August 5th, and there was direct contradiction of the plaintiff that he saw Mrs. Diehl in Atlantic City on August 6th. By the testimony of Mr. Snyderman and Mr. Giovanna it was shown that Mrs. Diehl was at that time in Philadelphia; that she went to Philadelphia in the same automobile with them. It was also shown by Mr. Rees of the Municipal Court that she was in Philadelphia on that date in the Municipal Court Building at 21st and Race street. He had fixed the date by a memorandum of a business transaction had with her at that time. Other witnesses, including Mr. and Mrs. Gallagher, who owned and kept the hotel where Mrs. Diehl was staying while in Atlantic City, and Mrs. O'Keefe, who roomed with Mrs. Diehl at different times in the summer of 1923, and the landlord in Philadelphia from whom she rented her apartment, testified in contradiction of the two principal witnesses for the complainant. If any credit is given to the testimony of the witnesses called for the respondent, their evidence is such an impeachment of that of the detectives as greatly to diminish its weight. The latter were admittedly employed to secure evidence to sustain the complainant's case. Their testimony, especially that of Mrs. Olwell, exhibits an interest and alacrity which certainly does not increase its value. These witnesses were of course competent, but the testimony of detectives who are employed to produce results in divorce cases, should be carefully scrutinized and is often open to suspicion. No witness for the complainant pretends to have seen the respondent and Ormond in a compromising situation except Mrs. Olwell, and the contradictions of her testimony are so numerous and in some cases so conflicting as to dates and conversations that we are not impressed with its reliability. Much importance is attached by the master and by the court to the fact that Mrs. Diehl and Ormond had adjoining rooms. This is

explained by the evidence in a reasonable way and the fact that they were acquaintances or friends is not sufficient to raise a presumption of an adulterous relation from the mere situation of their rooms. The proximity of rooms in the hotels and boarding houses of the country does not warrant an inference of meretricious relations between a man and woman who are acquaintances and who occupy contiguous rooms. Something more than that must be made to appear. Nor does the presence of the respondent and the co-respondent on the beach in bathing suits raise such presumption. Observers of the practices of thousands who appear on the beach at Atlantic City in July and August see multiplied instances of freedom which is not seen except at such resorts, but we cannot assume that all of those who are scantily attired at such places and exhibit relations somewhat familiar are to be charged with lewdness. Evidence to sustain the libellant's charge should be direct and clear. It is not requisite that the actual fact of adultery be proved, but the testimony must be of such a clear and convincing character as to leave no other conclusion in the mind of a reasonable person. The report of the master and the opinion of the learned judge of the court below satisfies us that due consideration was not given to the rebutting evidence of the respondent, nor was the interest and motive of the detectives referred to duly considered. We have examined the case with care and are of the opinion that the complainant has failed to establish, by satisfactory evidence, the charge set forth in the libel.

The decree is therefore reversed and the bill dismissed at the cost of the libellant.