Opinion by
 

 Baldrige, J.,
 

 The libel in this divorce case was filed July 18,1939, averring cruel and barbarous treatment and indignities to the person. On November 30,1939, by leave of court, it was amended by adding the charge of adultery. The court appointed a master, who, notwithstanding there
 
 *208
 
 were but 6 witnesses called, held 12 meetings and took over 500 pages of typewritten testimony, much of which is inconsequential and unnecessarily repetitious. The master recommended that the charges of cruel and barbarous treatment and indignities be dismissed as not being supported by sufficient evidence, (to which no exceptions were taken ,by the libellant) but that a divorce be granted on the charge of adultery. Exceptions to the report filed by the respondent were sustained by the court below and the libel dismissed. This appeal by the libellant followed.
 

 The parties were married September 1, 1928, when the libellant was 22 and the respondent 20 years of age. They lived together with one or two brief interruptions until May 28, 1938. Two children were born to this union; one died and the other, a girl 7 years of age, lives with her mother.
 

 The libellant did not prove by direct evidence the adultery, but invoked the “inclination and opportunity rule.” While it is not requisite that the actual fact of the illicit relation be proved the evidence to support the charge should be of such a clear and convincing character as to leave no other conclusion in the mind of a reasonable person:
 
 Diehl v. Diehl,
 
 87 Pa. Superior Ct. 545;
 
 Titter v. Titter,
 
 138 Pa. Superior Ct. 555, 10 A. 2d 873;
 
 Fulton v. Fulton,
 
 142 Pa. Superior Ct. 512, 17 A. 2d 222.
 

 The offense is alleged to have taken place on October 31, 1933, more than 6 years before the hearing in this divorce proceeding, at a combination Halloween and birthday party given by the Baxters at their home, which was described by the libellant as a “wild party.” It was attended by about 20 people, all of whom apparently drank freely during the evening. About 10 persons remained all night in the Baxters’ home, a small two-story house with 2 bedrooms and a nursery on the second floor.
 

 The libellant, to sustain the charge of adultery, re
 
 *209
 
 lied chiefly on the testimony of Daniel B. Morton and William E. Way. Morton testified that the morning after the party he opened the unlocked door of the
 
 middle
 
 room on the second floor and saw the respondent and Miller lying face to face on a mattress. They were both fully clothed and partly covered by a blanket. The uncontradicted testimony offered by the respondent was that this middle room was a nursery and that the only furniture it contained was a crib, chest of drawers, sewing machine, baby’s bassinet, and a small chair.
 

 Way testified that the next morning, after the party, he went through an open door into the
 
 front
 
 room on the second floor and saw respondent and a man, both fully clothed, lying across the bed with a “quilt or something over them.” When asked if the man was Miller he replied: “It may be or it may not be.” That was the room that Morton testified that he and Miss Baxter slept in that night and that nobody else occupied it.
 

 The stories told by these two witnesses, who admittedly did not have good memories, are irreconcilable. One saw the respondent and Miller in one room lying on a mattress, and the other, at practically the same time, saw her with a man in another room in bed. It is highly improbable that the respondent had sexual relations with a man that night or the next morning in a room easily entered by any of the numerous people in that small house. The above testimony is not of that convincing character that justifies the severance of marital ties.
 

 There was other evidence that the respondent treated Miller on numerous occasions in her home in the presence of her husband and his mother in an affectionate manner. The libellant testified that his wife told him that she was interested in and liked Miller much more than she did him, and would like to marry Miller if she could. All of this testimony was denied by the wife, who
 
 *210
 
 stated that her husband was a hard drinker, remained away from home a great deal of the time, took no interest in the home or his daughter, and that he had no reasonable grounds for charging her with the crime of adultery.
 

 The evidence indicated that this wife was imprudent and indiscreet, but a careful review of all the testimony, which it is unnecessary to detail, fails to convince us that she committed adultery. True, her conduct afforded reasonable ground for suspicion, but that is inadequate and too weak to carry the burden imposed upon the libellant of establishing by clear and convincing evidence her guilt:
 
 Callander v. Callander,
 
 82 Pa. Superior Ct. 14.
 

 The decree of the court below is affirmed.