## Brown v. Brown, Appellant.

Argued December 17, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*William A. Gray,* for appellant.

*Abraham L. Freedman,* with him *Morris Wolf,* of *Wolf, Block, Schorr & Solis-Cohen,* for appellee.

OPINION BY STADTFELD, J., January 31, 1936:

This is an action for divorce in which the libel, filed February 18, 1931 charged as the cause for divorce, indignities to the person. On May 2, 1932, leave was granted to libellant to add as a cause for divorce, adultery, and an amended libel was filed on May 9, 1932, averring as causes for divorce, indignities to the person and adultery. Subsequently, however, the charge of indignities to the person was withdrawn.

The parties were lawfully married on August 26, 1914, in the City of Philadelphia. Immediately after the marriage, the libellant and respondent resided together in Des Moines, Iowa, for about nine months. They then came east and spent two or three months in New York City as transients in a hotel. In 1915, the parties removed to Philadelphia, where they resided until August 28, 1926, when the libellant left the respondent.

On the date of the first master's hearing December 7, 1931, libellant was thirty-nine years of age, and the respondent, forty or forty-one. No children were born of the marriage.

The amended libel charged, inter alia, that respondent "did, on or about the 27th day of March, 1932, at No. 11 South 32nd Ave., Longport, New Jersey, and at various other times and places before said date, commit adultery with one John N. Silsbe, and with other persons to the libellant unknown."

In the spring of 1931, the respondent first occupied the house at 11 South 32nd Ave., Longport, a sparsely settled district having not more than several houses to a block. From the close of December, 1931, until the end of March, 1932, respondent occupied the house continuously, except when she was absent on trips to

Florida. Respondent's home was one of four in the block. On the opposite side of the street, there were no houses at all, only open fields. The respondent had no maid who slept in the house at night.

There were twenty-nine meetings held by the master, during which 715 printed pages of testimony were taken. The master found that the respondent committed adultery with John N. Silsbe, the co-respondent, shortly after midnight during the night of March 19th-20th, 1932, and on the morning of March 27th, 1932, at Longport, New Jersey. Exceptions, ex parte respondent, to the master's findings were dismissed by the court in banc in an opinion by PARRY, J., and a final decree in divorce entered, from which decree this appeal was taken.

The opinion of the master is merely advisory to the court, which it may accept and act upon or disregard in whole or in part according to its own judgment as to the weight of the evidence or his legal conclusions. In the record before us, the court, in its opinion says: "The record of the testimony is voluminous and full of contradictions and denials. The master, in his report, has reviewed the evidence at length and we have read and considered that evidence. It is apparent that he carefully considered the credibility of the witnesses and the weight to be given to the testimony of each. He concluded that the account of events given by the libellant and his witnesses was true. ...... We concur with the master in his conclusions." The master's report covers 74 printed pages in which he discusses all of the testimony and evidences great care in its consideration.

In accordance with our duty, we have read and examined the entire record and given it careful scrutiny.

The testimony ex parte libellant, consists of his own, one George A. Patterson, an investigator or detective,

Clifford Wyman, a business representative of the same company with which libellant was connected, and Valmore J. Suprenant, a friend of Wyman. Suprenant's assistance was requested, not by the libellant, but by Wyman. Neither of them received any compensation for their services and were paid their actual expenses only. The master found both of these witnesses disinterested.

The testimony on behalf of respondent consisted of that of herself, the co-respondent, John N. Silsbe, and one Edith DePamphilis, a next-door neighbor of repondent's. The last one named did not, according to the master's report, arouse in him any considerable degree of confidence, in her testimony or reliability.

The respondent described how she had become acquainted with the co-respondent. She desired to exchange her Ford automobile for a Chrysler. The salesman from whom she had purchased the Ford introduced her to Silsbe on Atlantic Ave., in Atlantic City. Silsbe was the manager of the Chrysler agency in Ocean City. In October of 1931 she purchased a Chrysler. She testified that the first time she ever saw Silsbe in her house was in January, 1932.

Silsbe was seen at the home of the respondent during a period of three months that her house was, with some intermission, watched, twelve times. Most of the visits were on weekends. Some visits were made on Friday, Saturday and Sunday of the same week, and sometimes more than one visit was made on the same day.

Respondent's explanation of Silsbe's visits were because of the condition of her automobile which necessitated numerous complaints. Silsbe himself was not a mechanic, and the mechanic who made the repairs, if any, was not produced. It seemed rather strange that his visits were mostly at night, and in some instances, extended into the early hours of the morning. Evidently he was combining pleasure with business.

Although Silsbe was seen at the respondent's house in Longport on twelve occasions, the master found that sufficient evidence of the commission of adultery was produced as to two only. The two occasions are shortly after midnight during the night of March 19th-20th, 1932 and the morning of March 27th, 1932. The amended libel filed in the case charges the commission of adultery with John N. Silsbe on or about the 27th day of March, 1932 at Number 11 South 32nd Avenue, Longport, New Jersey, and at various other times. On the night of March 19, 1932, the respondent and the co-respondent were seen together in one of the rear bedrooms upstairs. Silsbe, minus his coat, sat down on the bed or cot in that room and was soon joined by the respondent, who sat down beside him. Then Silsbe arose and extinguished the light in that bedroom. For about half an hour the house remained in total darkness. Regarding the early hours of Sunday, March 27th, the important facts were witnessed by Wyman and Suprenant. About 2:30 in the morning, the respondent and the co-respondent were seen together in the large front bedroom. At that time, the respondent was dressed in sleeping attire. The respondent was seen to pull down the shades of all the windows but one. The latter window she raised some inches, and then drew down the shade to correspond with the height of the raised window. The respondent now extinguished the lights in the large bedroom, and the entire house was in complete darkness.

No good purpose would be served by discussing the evidence at length.

As stated in Davis v. Davis, 91 Pa. Superior Ct. 354, "The sexual act is seldom performed in the presence of eye witnesses. Adultery is in most cases established by circumstantial evidence."

In the instant case, we have both the time and the place and the opportunity. In addition, the testimony

of Wyman and Suprenant indicates an affectionate relation existing between the respondent and the co-respondent, according to a conversation between them overheard at Hackney's restaurant at Atlantic City. The intimacy of their relation is further shown by respondent's admission that she called the co-respondent by his first name, "Jack."

If in connection with the testimony we consider the undisputed facts that the co-respondent had no scruples about entertaining and visiting a married woman, at that time estranged from her husband, at unseemly hours, spending hours with her, visiting a roadhouse with her, following her upstairs to drink whiskey in her bedroom, although she was clad in pajamas, and all this, though he knew she was being watched, and he himself had for two years been engaged to be married, it does not impress us as being with innocent intentions.

If these things are to be construed as innocent, our credulity would be taxed to the utmost. A careful examination of the testimony leads us to the conclusion that the testimony fully supports the findings of the master and the dismissal of the exceptions to his report and the entry of the final decree. The testimony leads us to the same conclusion.

The assignments of error are overruled and the decree of the lower court affirmed.