## Lisle v. Lisle, Appellant.

Argued April 16, 1937. Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Wm. J. Graham,* with him *Clyde P. Bailey,* for appellant.

*Harry Ravick,* for appellee.

OPINION BY CUNNINGHAM, J., September 29, 1937:

Respondent appeals from a decree of divorce granted the libellant, her husband, on the ground of her adultery. The libel as originally filed, October 1, 1935, charged cruel and barbarous treatment; it was later amended, on December 4, 1935, to include the charge of adultery. At the hearing before the court below, libellant, following the filing of a bill of particulars, relied solely on the latter charge.

Upon an independent examination and consideration of this record, we agree with the court below that the testimony taken before FLEMING, President Judge of the 49th Judicial District, specially presiding, justifies a decree in favor of the libellant.

The parties were married December 6, 1932. At the time of the hearing in the court below libellant was thirty-five and respondent thirty-four years of age. They separated August 11, 1934, and have lived apart since that date. After their separation respondent roomed for a time with her sister at 1112 Chelton Avenue, Brookline, Pittsburgh, Pa., and later occupied a third floor apartment of two rooms at 233 S. Pacific Ave., Pittsburgh.

It was not denied that from 2:30 A. M. on Sunday morning, November 10, 1935, until about noon of the same day, respondent occupied a room at the Kilkeary Hotel, Pittsburgh, Pa., with a man who was not her husband. He registered himself and respondent as "Mr. and Mrs. David Stein, Chicago, Ill."

As a bar against a decree based upon these admitted facts, respondent invoked the provisions of the 52d Section of "The Divorce Law" of May 2, 1929, P. L. 1237, 23 PS §52.

In a supplemental answer, filed February 10, 1936, she averred: "That the libellant, Dallas V. Lisle, procured lewd company for his wife and exposed his wife to lewd company whereby she became insnared to the alleged crime charged by the husband, libellant herein, and was induced to the alleged misconduct charged against her by friends of the libellant, acting for him and in his behalf and with his concurrence."

The "company" referred to was one David Liebling, admittedly employed by libellant in October, 1935, to "shadow" respondent for the purpose of preparing himself to testify in this proceeding. Respondent admitted her presence in the hotel on that date, but

claimed that the man registered as "David Stein" was David Liebling; that the latter had drugged her and taken her into the hotel while she was irresponsible, for the purpose of obtaining evidence against her.

Her version of the incident was that on Saturday, November 9, 1935, Liebling took her to the Smithfield Grill for dinner. They left the Grill about a quarter of nine and, after purchasing liquor at a state store, stopped at the Buffet for three quarters of an hour. They next visited the Paramount Inn, had some drinks there and watched the floor show. While there, she went to the ladies room and when she returned Liebling offered her a glass of beer which she drank. She testified: "After that I didn't remember much of anything." She stated she recalled nothing from then on until Liebling wakened her about 11:30 the next morning in a room in the Kilkeary Hotel, and that she and Liebling left together about noon.

Liebling denied being with respondent at the hotel. He testified he "shadowed" respondent on that day, saw her and a man, other than her husband, go into the Smithfield Grill, later to the Buffet and the Paramount Inn, and finally saw respondent and this man enter the Kilkeary Hotel about two o'clock in the morning. He then went into the lobby of the hotel and asked a bell boy to "keep an eye" on respondent and her companion. His further testimony was that the next morning he 'phoned the libellant who came down about eight and together they watched the hotel entrance. About noon respondent and the man who had accompanied her emerged from the hotel; they parted and respondent walked down the street toward Dusquene Way alone. As she did so Liebling took a picture of her which was offered in evidence. Two bell boys, both of whom were apparently disinterested witnesses and both of whom had ample opportunity to observe the man who regis-

tered as "David Stein," stated that this man was not David Liebling.

Of course, if the evidence showed that libellant's hired detective, Liebling, procured or assisted in bringing about any act, or acts, of adultery on the part of respondent, libellant would not be entitled to a decree, founded upon those acts. The law on this point was clearly stated and the authorities reviewed by Judge KELLER (now President Judge) in *Wotherspoon v. Wotherspoon*, 108 Pa. Superior Ct. 309, 164 A. 842. In that case the evidence tended strongly to show that libellant's agent and household servant, although not perhaps acting at libellant's express direction, nevertheless more or less directly procured and brought about acts of adultery on the part of the respondent wife. This court, in refusing the divorce, stated (p. 310): "It has been the rule of the English courts, followed by the appellate courts of this State, that if a wife is led into adultery by the acts or procurement of the husband's agent, even though the husband may not have authorized or directed his agent to bring it about, he is not entitled to a decree." See also *Teresi v. Teresi*, 109 Pa. Superior Ct. 513, 167 A. 235.

In the present case, however, the weight of the evidence supports libellant's contention that the man who spent the night of November 9, 1935, in the Kilkeary Hotel with respondent was a person other than libellant's detective.

Apart from the incident at the Kilkeary Hotel, a careful review of the testimony reveals other evidence which, in itself, would warrant a decree in favor of the husband.

Libellant testified he saw respondent and a man, the latter apparently in a policeman's uniform, enter 1112 Chelton Avenue, about ten o'clock P. M. on December 9, 1934. He said: "Shortly after they entered, the lights came on on the second floor,......and about

twelve o'clock midnight the lights went out, and about shortly before seven o'clock in the morning the lights came on and at seven o'clock this same man that went in the house with Mrs. Lisle the night before came out."

On three other occasions between December 9, 1934, and March 9, 1935, libellant stated, he observed the respondent and a man enter her sister's home on Chelton Avenue around midnight. Each time the lights were turned off shortly after they entered, remaining off until the man emerged from the house an hour and a half to three hours later. On April 19, 1935, he saw a man come alone and visit Mrs. Lisle at 1112 Chelton Avenue about 10:45 P. M. The lights were on in the second floor front when this man arrived; they were extinguished about 11:30 and turned on again shortly before the man left about one o'clock the next morning. Libellant was corroborated as to three of the above mentioned occurrences by Mr. Rinkes, a friend who accompanied him on these trips and observed the above circumstances.

Libellant testified that during the time respondent occupied the apartment at 233 South Pacific Avenue, and on seven different dates between September 30, and October 25, 1935, he observed a man enter her apartment late at night, remain there for several hours while the apartment was in darkness and depart at an early hour in the morning. As to two of these occurrences, libellant was corroborated by his cousin who watched respondent's apartment with him.

Respondent in her testimony flatly denied misconduct on her part on any of these occasions.

The evidence relative to these incidents at the apartments of respondent and her sister, although largely circumstantial, was, in our opinion, sufficient to sustain the decree. Adultery is of necessity usually established by other than direct evidence. As this court, (citing *Ammann v. Ammann*, 90 Pa. Superior Ct. 25, 28, and

other authorities) said in *Pierpoint v. Pierpoint*, 108 Pa. Superior Ct. 108, at page 110, 164 A. 808: "It is well settled in Pennsylvania that adultery need not be established by direct proof. Circumstances are sufficient whenever 'they would lead the guarded discretion of a reasonable and just man to a conclusion of guilt' ". We have many cases dealing with the degree of proof necessary to establish adultery as a ground for divorce in this Commonwealth. For example, see *Matchin v. Matchin*, 6 Pa. 332, 338; *Reighter v. Reighter*, 58 Pa. Superior Ct. 636; *Hilton v. Hilton*, 66 Pa. Superior Ct. 378; *King v. King*, 75 Pa. Superior Ct. 19; *Cook v. Cook*, 85 Pa. Superior Ct. 403; *Wilson v. Wilson*, 100 Pa. Superior Ct. 451; *Brown v. Brown*, 121 Pa. Superior Ct. 74, 78, 183 A. 90.

Upon consideration of the entire record, we cannot sustain the assignment of error.

Decree affirmed.