Snyder *v.* Snyder, Appellant.

Argued March 5, 1940.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*William A. Valentine,* for appellant.

*E. C. Marianelli,* for appellee.

OPINION BY HIRT, J., October 2, 1940:

In this action brought by the husband, the master recommended a divorce on the grounds of cruel and barbarous treatment, and indignities to the person. The court found the testimony sufficient to support the charge of indignities and granted the divorce on that ground alone. The respondent appealed. From an examination of all of the evidence we are of the opinion, independent of the findings of the master, that the charge of indignities is sustained by a preponderance of evidence amounting to clear and satisfactory proof. This is the degree of proof required. *Daly v. Daly,* 137 Pa. Superior Ct. 403, 9 A. 2d 192.

The parties were married in 1920 and are now approaching middle age; they have no children. Libellant had two sources of income. In recent years he had been employed as chief auditor for the county controller and, in addition, during all of his married life he conducted a separate public accounting business, with a number of accountants in his employ who also had a working interest in the firm. Libellant properly supported his wife and turned over to her his entire salary, monthly, as it was received from the county. Their differences began as early as 1925 when the respondent displayed a quarrelsome and petulant demeanor. She frequently upbraided libellant over trifles or became sullen and refused to speak to him for days. She threatened the libellant and ignored or humiliated him in public. At times she became hysterical and it was necessary for libellant to cancel business engagements which would take him away from home. This

attitude progressed and developed into one of studied antagonism resulting in a continuous course of conduct which annoyed, harassed and humiliated the libellant. Beginning in 1933 respondent started the practice of appearing in the libellant's accounting office in Wilkes-Barre several times each week. She was not an employee and had no financial interest in the business and no service was requested of her. Libellant's employees spent the morning of each day in the offices of their clients gathering data; they were accustomed to return to the accounting offices for the purpose of tabulating this material and preparing financial statements and reports under the supervision of libellant who was available the latter part of each afternoon. On her visits to the office the conduct of respondent was officious and distracting. She opened mail regardless of whether it was addressed to the firm or to her husband or to others in the office, and examined the confidential reports of clients. She scrutinized the firm's check book and questioned the expenditures and her conduct in general was so overbearing and obnoxious, that the three accountants employed by libellant were forced to leave the office whenever she appeared, as a result of which they were constantly behind in their work and their earnings were reduced. Her conduct was always annoying and disrupting. When her husband appeared she would upbraid him and threaten him in a loud voice that could be heard in neighboring offices and on different occasions she threw a bronze paper weight and a heavy glass ash tray and other articles at him. Because of her conduct, all of the accountants notified libellant that they were going to quit his employ. He then negotiated a sale of the business to them, abandoned his employment in the controller's office and left the respondent on July 2, 1935. He spent about six months in the West and then returned to Luzerne County, but he has not lived with the respondent since that date.

It is unimportant that since libellant's return he has been able to secure reemployment in the office of the county controller or that he has reestablished himself in the accounting business with his former employees. We are convinced that the acts of respondent and her treatment of her husband was such a course of conduct as to render his condition intolerable and his life burdensome. *Esenwein v. Esenwein,* 312 Pa. 77, 167 A. 350. Her conduct was not intermittent but was continuous. Libellant was corroborated by other credible witnesses in all essentials and though respondent denies the charge, it is not contended that her conduct in any degree was provoked by the libellant. *Garbett v. Garbett,* 136 Pa. Superior Ct. 333, 7 A. 2d 368. The evidence, here, establishes a course of conduct on the part of the respondent manifesting a hatred of and an estrangement from the libellant, expressed in indignities to his person justifying the granting of the divorce. *Putt v. Putt,* 118 Pa. Superior Ct. 74, 180 A. 92.

In addition to questioning the sufficiency of the evidence, respondent assigns as error the alleged failure of the master to set forth the facts found by him, specifically and in detail. This criticism is not valid for the report contains a review of the testimony which the master accepted as true and upon which he recommended a decree of divorce. His findings were not in the form required of a master in chancery but they need not be, for a master in divorce acts in an advisory capacity only and his findings are not conclusive. *Rommel v. Rommel,* 87 Pa. Superior Ct. 511. It is still the duty of the court to view the case de novo and from a consideration of all of the testimony to determine whether the charge of the libel is sustained, independent of the findings or the conclusions of the master. *Humphreys v. Humphreys,* 85 Pa. Superior Ct. 488. The master's recommendation is without binding authority, and his findings of fact, though entitled to the

fullest consideration, especially where the credibility of witnesses is involved, do not give preponderating weight to the testimony accepted by him nor impose an additional burden on a party to the action, either in the court below or on appeal. *Burns v. Burns,* 84 Pa. Superior Ct. 489; *Michaels v. Michaels,* 65 Pa. Superior Ct. 464; *Nacrelli et al. v. Nacrelli,* 288 Pa. 1, 136 A. 228. The Divorce Code, Act of May 2, 1929, P. L. 1237, provides that the court "may ...... appoint a master to take testimony and return the same to the court" who shall "make a report to the court of the proceedings had before him, and his opinion of the case": 23 PS §36, §54. The form of the report, since it is not prescribed by the Act, is for each local court to determine by court rule or otherwise. There is nothing indicating a failure of the master to comply with the established practice or the rules of the lower court in this instance. But even if there were, a failure in that respect resulting merely in formal inadequacies in a master's report is not ground for reversal. The proper practice is to appeal to the discretion of the lower court by moving to have the case resubmitted to the master for a new or amended report.

Decree affirmed.