## Fulton, Appellant, *v.* Fulton.

Argued November 20, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*William A. Gray,* for appellant.

*Ella Graubart,* with her *John N. Serena,* for appellee.

OPINION BY HIRT, J., December 18, 1940:

The master found the testimony sufficient to support the charge of adultery by clear and satisfactory proof and recommended a decree of divorce. The court, however, sustained the respondent's exceptions to the master's report and dismissed the libel. We find ourselves in accord with the master's conclusions as to the credibility of libellant's witnesses—the controlling issue— and the decree will be reversed.

The parties were married in 1921; because of the nature of the husband's employment they moved from

place to place on eight occasions, in five different states within a period of two and one-half years. In 1924 they built a house in a rural neighborhood adjoining the Borough of Aspinwall in Allegheny County and established a permanent residence there. Title to the land was taken by entireties and both contributed to the cost of the building. They lived there until 1933 when marital relations ceased, and on May 29, 1934 they entered into a separation agreement in writing. They had one child, a son then eleven years old. By the terms of the agreement respondent continued to occupy the house as a home for herself and their son, libellant reserving the right to the use of one sleeping room, which he occupied during 1935 but only occasionally thereafter. He agreed to pay the respondent $75 per month for her support and the maintenance of the son. He ceased making these payments after a few months following the separation because of reduced income. In November, 1936, he resumed payments of $50 a month but only after an order of court in a nonsupport action brought by the wife.

To supplement her independent income (the amount of which does not appear) the wife after the separation rented a room to a lodger and when he left in June 1936, Rochinni, the co-respondent became a member of the household under a similar arrangement. At the time of the alleged adultery respondent was 48 and Rochinni 28 years of age. He is a chemical engineer and was employed in a nearby research laboratory and is unmarried. There is little dispute that he had a place in the family life above that of a mere lodger or boarder. He frequently drove respondent's automobile with her and usually the son as passengers and all three often attended picture theatres. Occasionally they were seen in the automobile or at theatres without the son. In 1937 all three went on a pleasure trip to New York City in respondent's car and spent about a week there and in 1938 they went to Canada for a vaca-

tion and were together for about two weeks. In living at hotels on these trips they occupied separate rooms and the son slept either with his mother or with Rochinni.

Considering the difference of twenty years in their ages, the testimony at this stage of the proofs may be regarded as indicating nothing more than a motherly interest in this young man and is not inconsistent with respondent's innocence. However, libellant testified that late at night on one occasion in August 1936, he came to the house unexpectedly, and was met by respondent in her night clothes and on examination he found that neither bed in her room had been occupied and the day bed in the study adjoining Rochinni's room where she said she had been sleeping was without covers and showed no evidence of use. On November 2, 1936, he again returned and according to his testimony, through a window heard respondent send the son to his room about 8 P. M. and then saw respondent embracing Rochinni in the living room with some show of affection and later, from a hillside on a level with the second floor observed her in her night clothes going into Rochinni's room.

We do not take this testimony of libellant too literally. He was dominated by his suspicions and had lost all affection for his wife, and his often expressed desire to obtain a divorce and his interest in terminating a burdensome support order, in all probability gave color to his testimony. The support order was made on November 4, 1936 and at the hearing libellant said nothing of the conduct of his wife observed two days before. There is this circumstance, however, in favor of libellant's case: when libellant told Rochinni, following the latter incident, that he had seen respondent kiss and embrace him, and charged him with widening the marital breach and insisted that he move from the house, Rochinni nonetheless chose to remain.

The following is the additional testimony disputed by respondent upon which, in our opinion, the charge

of adultery must rest. On the night of July 1, 1938, two witnesses, Mabel I. Terris and Lawrence Yeskey, ascended a path along a hillside to an elevation opposite a window of respondent's bedroom on the second floor. They testified that the shades of all other windows were down but that the lower half of this window was unshaded and through it they could see into respondent's lighted bedroom and diagonally through an open doorway across a hall to the room of the co-respondent. They both testified that they observed the respondent disrobe in the presence of Rochinni and that he then left her room just before the son came down from the third floor to the bathroom, but returned shortly after the son returned to his room; that both of them were then nude until respondent slipped on a night dress; that after a few minutes Rochinni walked out of the bedroom and the lights were turned off. Both respondent and the co-respondent denied this testimony and referred to it as absurd. This evidence if credible is sufficient proof of adulterous relationship. "Evidence to sustain the libellant's charge should be direct and clear. It is not requisite that the actual fact of adultery be proved, but the testimony must be of such a clear and convincing character as to leave no other conclusion in the mind of a reasonable person": *Diehl v. Diehl*, 87 Pa. Superior Ct. 545. Adultery is in most cases established by circumstantial evidence. *Brown v. Brown*, 121 Pa. Superior Ct. 74, 183 A. 90.

There are a number of circumstances which make for credibility of this testimony and few that tend to discredit it. The house was built into a hillside in a secluded location, it was a house "in the woods on a dirt road" built twenty-five feet above the road. One of two neighboring houses was at a much higher elevation and the other much lower. There was a steep hillside at the back and around the end of the house opposite respondent's bedroom. The path along the hillside was used occasionally by those living in the

neighborhood and was not likely to be used after dark. It was raining on the night in question. All of these circumstances may account for the fact that one window in the bedroom was left unshaded. The plan of the second floor in evidence, agreed to by both parties, indicates conclusively, in spite of denials, that there was no physical obstruction to the view from the hillside into the bedroom and across the hallway. The path was within forty feet of the window. The character of the witnesses was not attacked. They were not professional investigators. One of them, formerly engaged in the real estate business, was selected by libellant's counsel and was sent from Philadelphia to Aspinwall. From this counsel's standing in his profession, we may place some confidence in the integrity of his appointee. The other witness, a leverman working for a steel company, was chosen by a police officer in Aspinwall. Neither of them had known the other and they had no interest in the case. They were each paid expenses and five dollars a day for their services. They watched the house on three successive nights and observed nothing wrong except on the night in question.

The most that can be said against this testimony is that respondent's counsel, whose judgment we respect, has confidence in respondent's innocence in spite of it. The master however had the advantage, which we do not, of observing these two witnesses in aid of estimating their credibility and he accepted their testimony as true. His report is admirable and indicates that the consideration given to all of the testimony was commensurate with the seriousness of the charge. The master's findings of fact are entitled to the fullest consideration where the credibility of witnesses is involved. *Snyder v. Snyder,* 141 Pa. Superior Ct. 533, 15 A. 2d 383.

The decree dismissing the libel is reversed, the libel is reinstated, and the record is remitted that a decree of divorce a vinculo matrimonii may be entered.