## Isaacs *v.* Isaacs, Appellant.

Argued October 23, 1941.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Rhodes and Hirt, JJ.

*Joseph L. Fox,* for appellant.

*Harry Goldbacher,* for appellee.

OPINION BY RHODES, J., July 23, 1942:

Libellant filed his libel in divorce charging the respondent, his wife, with adultery. He, in compliance with a rule issued, filed a bill of particulars. Respondent answered the libel and the bill of particulars, denying adultery and setting up recrimination as an additional defense. The case was referred to a master, who, after 26 hearings which resulted in 1,519 pages of testimony exclusive of exhibits, recommended the granting of a divorce in favor of libellant on the ground of adultery. Exceptions thereto were overruled by the court below, and a decree in divorce a.v.m. entered. The opinion was written by FENERTY, J. Respondent has appealed.

The parties were married on March 5, 1912, and resided together until January 4, 1928.

The proof of the charge of adultery is found in the testimony of libellant and three other witnesses who on various occasions observed the conduct of respondent and William S. Roper, the co-respondent. This extended from February 6, 1939, to June 9, 1939, as recited in the bill of particulars. Testimony was also introduced relative to incidents occurring between August 2, and November 4, 1939. We have not considered this testimony. It is not material to a determination of the issue, and we do not pass on its admissibility.

Libellant and his witnesses testified that the places

where most of the actions alleged as cause for divorce occurred were No. 6546 Dorel Street, and less frequently No. 2115 S. Daggett Street, both in the city of Philadelphia, which were the homes of respondent's sisters. Libellant testified that, becoming suspicious of respondent's conduct, he stationed himself in the street outside the Dorel Street house, and observed respondent and co-respondent many times alone in the second story back bedroom of this house. He would observe the light go on in this room and then he would see the two enter. Frequently they would embrace and kiss and ultimately the light would be extinguished. Then while the whole house was in darkness he would wait until co-respondent reappeared. Sometimes this would be hours afterwards. At times co-respondent would still be within when the libellant left. For instance, on the evening of April 1, 1939, he saw respondent and co-respondent at the Dorel Street house. They came about 8:15 P.M., and about midnight they entered the back bedroom and pulled down the shades. Again on April 8, 1939, he saw, as he testified, respondent and co-respondent together all evening. They were seen to enter the same bedroom about 2:45 A.M., and a few minutes later the lights were put out. Libellant was corroborated as to what transpired on these occasions, which are typical of many more. On May 6, 1939, one of the many occasions described in the testimony, libellant in company with Eugene Yaeger and Joseph D. Knowlan, watched the premises at No. 2115 S. Daggett Street. A large group of people had gathered there that night. About 2:30 A.M. everyone left except respondent and co-respondent who remained alone in the house. About this time the lights were put out, and when libellant and his witnesses left at 4:30 A.M. respondent and co-respondent were still in the house. In addition to these two individuals, a third, Mrs. Edith M. Schubert, helped him watch the Dorel Street house. Libellant was not always accompanied. He testified to many occasions on which he observed

respondent and co-respondent acting in the manner described: As to eleven of these meetings at one house or the other he was corroborated. There was considerable testimony as to automobile trips taken together by respondent and co-respondent and of their visits to moving picture theatres and tap rooms during the period from February 6, 1939, to June 9, 1939. There was no proof of adultery on any of these occasions. The evidence as to what frequently occurred at the Dorel Street and Daggett Street homes of respondent's sisters as narrated by libellant and the other witnesses would be sufficient proof of adulterous relationship, if believed.[1] The record discloses that as much of the room of the Dorel Street house could be seen as libellant and his witnesses described. As in most cases of this type, circumstantial evidence is relied upon to establish the adultery. Our examination of the voluminous record leads us to conclude that there has been a compliance with the necessary requirements as stated in *Diehl v. Diehl*, 87 Pa. Superior Ct. 545, at page 550: "Evidence to sustain the libellant's charge should be direct and clear. It is not requisite that the actual fact of adultery be proved, but the testimony must be of such a clear and convincing character as to leave no other conclusion in the mind of a reasonable person."

We find no reason to disbelieve libellant's witnesses. As we have frequently stated, the master's findings of fact in a divorce action are entitled to the fullest consideration where the credibility of witnesses is involved. *Snyder v. Snyder*, 141 Pa. Superior Ct. 533, 536, 537, 15 A. 2d 383; *Fulton v. Fulton*, 142 Pa. Superior Ct. 512, 516, 17 A. 2d 222. Respondent's and co-respondent's conduct as disclosed by the record cannot be accepted by any reasonable person as that of innocent individuals.

The testimony of respondent and her witnesses con-

---

[1] Cf. *Lisle v. Lisle*, 128 Pa. Superior Ct. 533, 194 A. 207; *Brown v. Brown*, 121 Pa. Superior Ct. 74, 183 A. 90.

stituted a denial of the charges against her. Having carefully examined this testimony we are not greatly impressed with it, and we are not convinced that it overcomes the proof of the facts which establish her own misconduct.

We agree with the court below that respondent did not sustain her counter charges of adultery against libellant, and that she presented no proof of his adultery which should be accepted. Since the statutory defense of recrimination is based upon the commission of adultery by the libellant, the burden is on the respondent to prove it. Section 52 of the Act of May 2, 1929, P. L. 1237, 23 PS §52. The evidence necessary to prove recrimination must have the same degree of certainty necessary to establish the existence of the charge of adultery against the respondent. *Jackson v. Jackson,* 49 Pa. Superior Ct. 18, 23. At most, the alleged relationship of libellant and a Mrs. Deemer creates no more than a suspicion that it was closer than mere friendship. His conduct was at least indiscreet, and could not fail to create discord in both his own and the Deemer household. Most of this testimony relates to events prior to 1928, when libellant and respondent were living together. Nor do we accept the testimony of respondent as to the alleged admission of adultery made to her by libellant (p. 1101 n. t.). We reach this conclusion on an appraisal of her own testimony, although it has long been established in Pennsylvania that uncorroborated confessions of this nature are inadequate. *Matchin v. Matchin,* 6 Pa. 332, 337; *Randolph v. Randolph,* 59 Pa. Superior Ct. 377, 378; *Morse v. Morse,* 81 Pa. Superior Ct. 602, 603.

Positive testimony given by respondent as to libellant's misconduct was completely disproved by an entirely disinterested witness. Her credibility was bound to suffer accordingly.

The master's report and the opinion of the court

below contain a review of the material testimony and a careful analysis of its strength and weakness. From our independent examination of the record we agree with their findings and conclusion.

The decree is affirmed.