Silfies, Appellant, v. Silfies.

Argued October 4, 1950. Before RHODES, P. J., RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ. (HIRT, J., absent).

*Francis H. S. Ede*, with him *Calvin F. Smith* and *Smith, Paff, VanSickle & Gafford*, for appellant.

*Lewis R. Long*, for appellee.

OPINION BY ROSS, J., March 12, 1951:

In this divorce action, the parties were married on April 9, 1938, and resided together in various parts of Northampton and Lehigh counties until September 5, 1948, when the plaintiff-husband left the marital habitation. On March 21, 1949, he instituted this action for a divorce on the grounds of cruel and barbarous treatment and indignities to the person. The case was referred to a master who, after several hearings, recommended that an absolute divorce be granted on the single ground of indignities. The defendant's exceptions to the master's report were sustained by the court below, the plaintiff's complaint dismissed, and he took this appeal.

The primary issue involved in the case is the credibility of the parties and their witnesses. The master's conclusions on this issue are unequivocal. He reports: "The testimony of the Plaintiff and his witnesses was direct and positive . . . [and] . . . was not shaken in cross-examination. . . . The Master observed closely the manner and attitude of the witnesses during the taking of the testimony. He is convinced that the Plaintiff and his witnesses are telling the truth." He also stated that ". . . the manner in which the Defendant and her witnesses testified and their demeanor upon the witness stand lends strength to this belief." The weight which an appellate court should accord a master's findings on the question of credibility in a divorce case is crystallized in *Smith v. Smith,* 157 Pa. Superior Ct. 582, 43 A. 2d 371, in which Judge RENO stated, at pages 583 to 585: "Although we are not concluded by a master's findings upon credibility, his judgment upon that vital factor is entitled to the fullest consideration, Lyons v. Lyons, 116 Pa. Superior Ct. 385, 176 A. 792, and especially in a contested case. Fullwood v. Fullwood, 156 Pa. Superior Ct. 409, 40 A. 2d 876. He possesses an advantage not granted to us. He sees the parties and their witnesses face to face and observes their appearance and demeanor as they testify. We are restricted to the cold type of the record from which temperament and personality have been subtracted. Yet the demeanor of witnesses is the very touchstone of credibility; in the absence of reactions produced by other applicable tests, the appearance and demeanor of witnesses are the litmus by which the presence of truth is revealed. . . . Therefore, unless the transcript reveals a ground upon which the master's finding of credibility can be impeached, we give his conclusion upon that factor, based upon his observance of appearance and demeanor, the fullest consideration, especially when

his report presents a searching analysis of the testimony and indicates that he has given to all the testimony thoughtful deliberation commensurate with the charge. Fulton v. Fulton, 142 Pa. Superior Ct. 512, 17 A. 2d 222. Of course, even to the printed record we may and do apply the other standard tests of veracity. We sedulously examine and weigh the record to discover inherent improbabilities in the stories of the witnesses, inconsistencies and contradictions, bias and interest, opposition to incontrovertible physical facts, patent falsehood and the other factors by which credibility may be ascertained. But when the record responds favorably to these tests, when the inanimate record as we read it discloses no sound basis for rejecting the master's conclusion founded upon his observation of demeanor and appearance, we are warranted in accepting his findings."

We have read with care the report of the master against a background of the testimony adduced at the hearings before him and think it clear that his report "presents a searching analysis of the testimony and indicates that he has given to all the testimony thoughtful deliberation commensurate with the charge". Further, our independent examination of the record and application thereto of the tests of veracity enumerated in *Smith v. Smith,* 157 Pa. Superior Ct. 582, 43 A. 2d 371, supra, serves to substantiate the master's finding with regard to credibility. For example, we find, as did the master, the defendant's categorical denial of the plaintiff's charges irreconcilable with her voluminous attempt to show that the plaintiff's conduct provoked the very actions she denies. It is our conclusion that we are warranted in accepting the master's finding on the question of credibility.

Since the issue of credibility is resolved in the plaintiff's favor, the testimony clearly and satisfactori-

ly establishes his right to a divorce on the ground of indignities. He testified that the defendant called him vile and opprobrious names "at least three, four times a week" from shortly after their marriage until his departure from the common residence. In this particular he is corroborated by two of his sisters-in-law, both of whom testified that the defendant directed vile language to the plaintiff and that her manner in doing so was "very high tempered". No purpose would be served by reproducing from the record the language attributed to the defendant; it is sufficient to observe that it would be considered vile and obscene measured by the most liberal standard of decency.

The plaintiff also testified that his wife continually made false and unwarranted accusations of infidelity against him. For about a year prior to entering the Merchant Marine in August 1943, he was employed by the Jacobs Aircraft Company at Pottstown. He testified that during this period the defendant accused him "two, three times a week" of "laying around" with women workers at the aircraft plant, and also accused him of promiscuous conduct with unnamed women in Europe while he was serving in the Merchant Marine. These accusations continued "maybe once a week, sometimes once every two weeks" after plaintiff's separation from the Merchant Marine. On his return home after the war, he was employed by the Northampton Lumber Company. It was established by the testimony of fellow workers and by the payroll records of the lumber company that he worked 748 hours of overtime in the year immediately preceding his separation from his wife. During this period the defendant repeatedly insisted that he was not working in the evenings but rather was "laying around" in hotels with "bags" and "bar flies". The record discloses other incidents which indicate that the defend-

ant was consumed by unreasoning jealousy, a state of mind which might easily lead to the unfounded accusations of infidelity she is charged with making. The record is devoid of evidence tending to show that the accusations were true or that they were made on probable cause.

We conclude that the plaintiff is entitled to a decree of divorce a.v.m. on the ground of indignities to the person. Indignities to the person, as recognized by the law, have certain fundamental characteristics which must be recognized in the appraisal of the evidence: (1) the indignities must consist of a course of conduct on the part of the defendant; (2) that conduct must have rendered the condition of the plaintiff intolerable and life burdensome; and (3) there must be evidence from which an inference of settled hate and estrangement may be deduced. *Monaco v. Monaco,* 160 Pa. Superior Ct. 117, 50 A. 2d 520. In the present case, the conduct of which the plaintiff complains was continuous over a period of years; here the episodes did not "divide themselves into groups separated by long intervals of time stated" as they did in *Esenwein v. Esenwein,* 312 Pa. 77, 167 A. 350. There is no escape from the conclusion that the indignities here consisted of a course of conduct.

We have repeatedly said that it is impossible to lay down a general rule for the determination of what indignities render the condition of the injured party intolerable and his life burdensome. Continuous unfounded accusations of infidelity when accompanied by other degrading or humiliating conduct are sufficient to make out a case of indignities to the person. Both elements are present in this case. Finally, the continual use of opprobrious names by the defendant directed to the plaintiff, in private and before others, is evidence

from which an inference of settled hate and estrangement may be deduced.

The order dismissing the libel is reversed, the libel is reinstated and the record is remitted to the court below with direction to enter a decree of absolute divorce on the ground of indignities to the person.