COURT OF CHANCERY
OF THE

TAMIKA R. MONTGOMERY-REEVES
VICE CHANCELLOR

New Castle County Courthouse
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: February 2, 2016
Date Decided: May 4, 2016

John M. LaRosa, Esquire
Law Office of John M. LaRosa
Two East 7th Street
Suite 302
Wilmington, DE 19801-3707

Joseph C. Handlon, Esquire
Department of Justice
State of Delaware
Deputy Attorneys General
Carvel State Building
820 North French Street, 6th Floor
Wilmington, DE 19801

RE: ***First State Towing, LLC and Katharine E. Morris v. Div. of State Police, Dep't of Safety and Homeland Sec., State of Delaware, et al.***
Civil Action No. 11045-VCMR

Dear Counsel:

This Letter Opinion addresses the defendants' motion to dismiss the plaintiffs' complaint (the "Complaint"). For the reasons stated below, the defendants' motion to dismiss is granted.

## I. BACKGROUND

Subject to certain qualifications, the Delaware Code authorizes "[a]ny police officer of this State, or a county or municipality therein, while in the performance of duty, [to] remove, store or cause to be removed or stored from any public highway, right-of-way, street or alley, at the owner's or operator's expense, any

motor vehicle, trailer or part thereof,"[1] and further requires the Delaware Department of Safety and Homeland Security ("DSHS") to promulgate regulations governing the selection of towers (the "Towing Regulations").[2] These Towing Regulations define "Approved Tower" as "a towing operator that has applied to the Division of State Police for certification and been approved by the Division after meeting all criteria for approval, including but not limited to the inspection of the operator's tow vehicle(s)."[3] Each Approved Tower must complete and submit a renewal form to its assigned troop each January.

Plaintiffs, First State Towing, LLC ("FST") and Katharine E. Morris, FST's President, majority owner, and operator, submitted an application to Defendant Division of State Police, Department of Safety and Homeland Security, State of Delaware ("Delaware State Police" or "DSP"), to become an Approved Tower as early as 2000, were approved on or about January 2, 2001, and were assigned a Troop Area ("Troop Area 6") patrolled by Delaware State Police Troop 6 ("Troop 6"). As of the filing of the Complaint on May 20, 2015, Defendant Colonel Nathaniel McQueen, Jr. was the superintendent of DSP and its highest-ranking

---

[1]     21 *Del. C.* § 6901(a).

[2]     *Id.* § 6901(c).

[3]     2 *Del. Admin.* § 1301 ("Towing Regulations").

officer, and Defendant John Doe was the current Troop Commander of Troop 6 (together with DSP, "Defendants").

The purpose of the Towing Regulations is "to protect and promote public safety and to maintain hazard-free streets and highways by: requiring tow vehicles and equipment to meet minimum specifications; requiring tow truck operators to be licensed and insured and to hire only competent and responsible drivers; and by creating a more equitable and uniform system of handling towing calls."[4] The Towing Regulations provide as follows:

> 6.1 Based on the needs of public safety, the Troop Commander may designate part of the Troop Area as a Special Assigned Area to be served by one or more Approved Towers taking into account such criteria as, but not limited to, motor vehicle accident statistics; traffic patterns; and other criteria relating to the response time of towing companies; the density of approved towing companies; and prior history of reliable and expeditious towing services.

> 6.2 Each Troop Commander shall have the discretion, based on the needs of public safety, to designate one or more Approved Towers to provide all non-consensual towing services in either the Troop Area or a Special Assigned Area. The Troop Commander shall establish the number of Approved Towers based on the need to maintain adequate and timely public services to minimize management of a rotation system. The Troop

---

[4] Towing Regulations § 1.0.

> Commander may revise the number of approved Towers if he or she finds that the public is not being appropriately served by the existing number of towers.
>
> 6.3 If there are more than one Approved Tower for the Troop Area or Special Assigned Area, they shall be placed on a rotating list and shall be called by the Troop duty officer to remove a wrecked, disabled, stolen or abandoned vehicle, or a vehicle following an arrest, according to the tower's placement on a Troop towing rotation list for that area and according to the tow vehicle classification for the size of the vehicle to be towed. Approved Towers will be called in succession from the top of the list.[5]

FST is one of Troop 6's five Approved Towers. Troop 6 utilizes Special Assigned Areas, to which only one Approved Tower is assigned, rather than a rotating list. In 2002, after the owner of a then-Approved Tower, Colemery's, was accused of committing gun crimes, DSP revoked Colemery's Approved Tower status and reassigned its Special Assigned Area to FST. The next day, however, DSP divided that area and assigned the newly created Special Assigned Areas to two other Approved Towers, leaving FST without any Special Assigned Area. Plaintiffs protested for two years until, in 2004, DSP assigned FST a small Special Assigned Area and promised to give FST an area comparable to those assigned to the other Troop 6 Approved Towers within one year.

---

[5]    *Id.* §§ 6.1-6.3.

Plaintiffs allege that, to this day, Defendants have not assigned FST, the only female-owned towing company in Delaware, additional territory. Additionally, all male-owned Approved Towers tow vehicles for more than one Troop, whereas Plaintiffs are the only Approved Tower assigned to just one Troop. Further, when the Christiana Mall parking lot "most recently" became available, it was assigned to B & F Towing ("B & F"). In fact, Plaintiffs allege that B & F removes the most towable vehicles from Troop Area 6, while FST receives the fourth most calls from Troop 6.[6] This is despite the fact that FST's average response times are within the acceptable limit of thirty minutes, but the response times of B & F average forty-five minutes or longer. Plaintiffs seem to suggest that B & F's favored status might result from its owner's relationship to certain state employees. Specifically, the owner of B & F has a male relative who is a retired State Trooper previously assigned to Troop 6, and B & F also employed at least one Delaware State Police officer part-time until he retired recently.

Plaintiffs allege that they have lost and continue to lose tens of thousands of dollars in revenues each month as a result of Defendants' refusal to implement an equitable and uniform system of handling towing calls in the Troop Area, which

---

[6] For example, in a three day period, B & F commonly receives thirty calls from Troop 6 while Plaintiffs only receive one call.

Plaintiffs argue is a failure to comply with the Towing Regulations. Plaintiffs state that over the past fourteen years, from 2002 to the present, they made numerous efforts (both on their own and with the help of state legislators in Dover) to resolve this issue, including contacting prior Captains at Troop 6, the Colonel of the Delaware State Police, and the DSHS, but Defendants transferred away the Captains at Troop 6 who attempted to remedy this issue. Plaintiffs contend Defendants unlawfully exclude Plaintiffs and use male-owned businesses instead.

## II.    PROCEDURAL HISTORY AND CONTENTIONS

On May 20, 2015, Plaintiffs filed their three-count Complaint. Count I alleges violations of 21 *Del. C.* § 6901 and 2 *Del. Admin.* § 1301; Count II alleges Defendants discriminate against Morris on the basis of her sex and against FST as a minority-owned business in violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983; and Count III alleges Defendants treat Plaintiffs differently for arbitrary or malicious reasons and without rational basis in violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983. The Complaint seeks a judgment declaring Defendants' acts to be in violation of Plaintiffs' rights under constitutional, statutory, and regulatory law; a mandatory injunction directing Defendants to (1) implement a rotating list of all Approved Towers for Troop 6 and to place Plaintiffs at the top of the rotating

list of Approved Towers, (2) call FST to remove the next wrecked, disabled, stolen or abandoned vehicle, or a vehicle following an arrest, located in the Troop Area 6, and (3) continue to call FST to remove towable vehicles in succession according to FST's placement on the rotating list and equally as often as the other Approved Towers; a judgment against Defendants, jointly and severally, for compensatory damages, lost revenue, decreased earnings opportunities, humiliation, embarrassment, injury to reputation, emotional distress, and other pecuniary and non-pecuniary losses and permanent injuries; and award Plaintiffs attorneys' fees, costs, and pre- and post-judgment interest.

On August 10, 2015, Defendants moved to dismiss Plaintiffs' Complaint on several bases. First, Defendants contend the Delaware statutory and regulatory claims should be dismissed under Court of Chancery Rule 12(b)(6) because no private cause of action is available to enforce any perceived rights under the statute. Second, Defendants assert that sovereign immunity bars the action. Third, Defendants argue that Plaintiffs' claims are time-barred. Fourth, Defendants contend that the Complaint fails to state an equal protection claim. Fifth, and finally, Defendants contend that the case should be dismissed under Court of Chancery Rules 12(b)(7) and 19(b) for failure to join all Troop 6 Approved

Towers. Several of these grounds are strong and potentially dispositive, but because Plaintiffs' claims are time-barred, I limit my discussion to that issue.

Plaintiffs argue Defendants' laches defense fails because it is a factual inquiry not well-suited for a motion to dismiss; no unreasonable delay, change of position, or prejudice occurred; any analogous statute of limitations was tolled until Plaintiffs were on inquiry notice that other towers were receiving more calls; and the continuing violation doctrine preserves the § 1983 claims. On September 10, 2015, in support of their argument that no unreasonable delay occurred, Plaintiffs attached an affidavit and a purported contract (the "Supplemental Materials") to their Answering Brief attempting to explain how they gained knowledge of the facts underlying their cause of action during the winter of 2014. Defendants argue that the Court should disregard the Supplemental Materials and consider only the well-pled facts in the Complaint.

## III. STANDARD OF REVIEW

The standard of review for dismissal pursuant to Rule 12(b)(6) is well established. Delaware applies the reasonable conceivability standard, under which a motion to dismiss will be denied if a plaintiff's well-pled factual allegations would entitle him or her to relief under any reasonably conceivable set of

circumstances.[7]  The Court accepts all well-pled facts as true and draws all reasonable inferences in favor of plaintiffs.[8]  The Court, however, need not accept conclusory allegations unsupported by specific facts or draw unreasonable inferences in favor of plaintiffs.[9]

I decline to accept and consider the Supplemental Materials purporting to explain how Plaintiffs gained knowledge of facts underlying their causes of action in the winter of 2014.  Plaintiffs could have amended their Complaint or filed a motion to amend in conformity with Court of Chancery Rule 15, but chose not to do so.  Furthermore, even if I consider the Supplemental Materials (and I do not), the facts alleged therein relating to the dates on which Plaintiffs learn of the alleged discrimination largely are contrary to those pled in the Complaint. Therefore, I consider only the well-pled facts of the Complaint and all reasonable inferences drawn therefrom in Plaintiffs' favor.

---

[7]     *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.2d 531, 537 & n. 13 (Del. 2011).

[8]     *Id.* at 536.

[9]     *Price v. E.I. duPont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011).

## IV. LACHES ANALYSIS

"[A]ffirmative defenses, such as laches, are not ordinarily well-suited for treatment on [a Rule 12(b)(6) motion to dismiss]."[10] Nevertheless, laches can be applied at the pleadings stage if "the complaint itself alleges facts that show that the complaint is filed too late."[11] Under Delaware law, laches bars a cause of action if a plaintiff waited an unreasonable length of time before asserting the claim and the delay unfairly prejudiced the defendant.[12] Laches requires the Court to determine whether a defendant can show three elements: "first, knowledge by the claimant; second, unreasonable delay in bringing the claim; and third, resulting prejudice to the defendant."[13]

Because equity generally follows the law,[14] "a party's failure to file within the analogous period of limitations will be given great weight in deciding whether

---

[10]    *Reid v. Spazio*, 970 A.2d 176, 183 (Del. 2009); s*ee also Capano v. Capano*, 2014 WL 2964071, at \*7 (Del. Ch. June 30, 2014) ("Thus, motions to dismiss based upon laches are not routinely granted . . . .").

[11]    *Kahn v. Seaboard Corp.*, 625 A.2d 269, 277 (Del. Ch. 1993).

[12]    *Bean v. Fursa Capital P'rs, LP*, 2013 WL 755792, at \*4 (Del. Ch. Feb. 28, 2013).

[13]    *Whittington v. Dragon Gp., L.L.C.*, 991 A.2d 1, 8 (Del. 2009) (citation omitted).

[14]    *See State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 527 (Del. Ch. 2005) ("[W]hen claims are barred by a controlling statute of limitations, a court of equity need not engage in a traditional laches analysis.").

the claims are barred by laches."[15]  The analogous period for an action based on a statute is three years,[16] and claims brought for violation of the United States Constitution pursuant to 42 U.S.C. § 1983 are subject to a two-year statute of limitations.[17]

### A.    Plaintiffs Knew of Their Claims, but Unreasonably Delayed

The Complaint itself alleges facts that show it was filed long after Plaintiffs' claims accrued and the analogous statute of limitations expired.  All of the specific facts Plaintiffs plead to support their causes of action occurred in or before 2005, at the latest.  In short, FST became an Approved Tower in 2001; Defendants assigned, then unassigned, a large Special Assigned Area to FST in 2002; and Plaintiffs protested for two years until Defendants assigned FST a small Special Assigned Area in or around 2004 and promised to give FST an area comparable to

---

[15]    *Whittington*, 991 A.2d at 9 (citing *Adams v. Jankouskas*, 452 A.2d 148, 157 (Del. 1982)); *In re Sirius XM S'holder Litig.*, 2013 WL 5411268, at *4 (Del. Ch. Sept. 27, 2013) ("[A] filing after the analogous statute of limitations has run cannot be justified except in the 'rare' and 'unusual' circumstances that a recognized tolling doctrine excuses the late filing.") (citing *Gordon Scott Levey v. Brownstone Asset Mgmt.*, 76 A.3d 764, 772 (Del. 2013); *IAC/InterActiveCorp v. O'Brien*, 26 A.3d 174, 177-78 (Del. 2011); *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 2012 WL 3201139, at *15 (Del. Ch. Aug. 7, 2012)).

[16]    *See* 10 *Del. C.* § 8106(a) ("[N]o action based on a statute . . . shall be brought after the expiration of 3 years from the accruing of the cause of such action.").

[17]    *Parker v. Gadow*, 893 A.2d 964, 968 (Del. 2006).

those assigned to the other Troop 6 Approved Towers within one year, *i.e.*, in or before 2005. Accordingly, the Complaint pleads that Plaintiffs objectively were aware that Defendants were using Special Assigned Areas instead of a rotating list as early as 2002 and that the size of their Special Assigned Area was smaller and the number of towing calls they received was lower than those of other Approved Towers in or before 2005 at the latest.

### B. Tolling Doctrines Do Not Apply

Plaintiffs' claims presumptively will be barred unless a tolling doctrine exists that would justify the late filing.[18] "[A] cause of action 'accrues' under Section 8106 at the time of the wrongful act, even if the plaintiff is ignorant of that cause of action."[19] Plaintiffs bear the burden of pleading facts demonstrating that a tolling doctrine applies.[20] But "no theory will toll the statute beyond the point where the plaintiff was objectively aware, or should have been aware, of facts

---

[18] *Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, 2010 WL 363845, at *6 (Del. Ch. Jan. 27, 2010) ("In the absence of an applicable tolling doctrine, a claim cannot be pressed in the Court of Chancery if the statute of limitations has passed."), *aff'd*, 7 A.3d 485 (Del. 2010).

[19] *Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, 62 A.3d 62, 77 (Del. Ch. 2013).

[20] *Smith v. Mattia*, 2010 WL 412030, at *3 (Del. Ch. Feb. 1, 2010); *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 1594085, at *19 (Del. Ch. June 25, 2005).

giving rise to the wrong."[21]  Here, Plaintiffs argue that the doctrine of inherently unknowable injuries, equitable tolling, and the continuing violation doctrine preserve their claims.

The inherently unknowable injury doctrine, which tolls the limitations period until a plaintiff has reason to know that a wrong was committed,[22] is facially inapplicable because Plaintiffs pled that they knew a wrong was committed by 2005, at the latest.

Plaintiffs' equitable tolling argument fails for the same reason.  Plaintiffs argue that, "[u]nder the theory of equitable tolling, the statute . . . is tolled for claims of wrongful self-dealing, even in the absence of actual fraudulent concealment, where a plaintiff reasonably relies on the competence and good faith of a fiduciary."[23]  Defendants challenge whether equitable tolling can apply to these claims, but I need not resolve that dispute because if any of Plaintiffs' theories toll the limitations period, "it is tolled *only until* the plaintiff discovers (or exercising reasonable diligence should have discovered) his injury.  Thus, the

---

[21]     *Capano*, 2014 WL 2964071, at *9 (citing *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007)).

[22]     *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *5 (Del. Ch. July 17, 1998).

[23]     Pls.' Answering Br. 42 (citing *Dean Witter*, 1998 WL 442456, at *6).

limitations period begins to run when the plaintiff is *objectively* aware of the facts giving rise to the wrong, *i.e.*, on inquiry notice."[24] Plaintiffs' effort to invoke the equitable tolling doctrine fails because they pled that they objectively were aware of the conduct they now allege was wrongful by 2005 at the latest.

Finally, Plaintiffs rely on federal case law to argue that the continuing violation doctrine preserves their § 1983 claims, stating as follows:

> Here, Defendants are engaging in a prohibited course of conduct *by refusing to create a more equitable and uniform system of handling towing calls* still to this day. Alternatively, their conduct in *providing an inequitable and non-uniform system with significantly more calls to B & F* is a continuing practice. Thus, the two year limitations period for § 1983 claims runs from the date of the last alleged violation. Here, Plaintiffs allege that "[a]s a result, an inequitable and non-uniform system of handling towing calls in the Troop Area *remains in place to this day*."[25]

The United States Court of Appeals for the Third Circuit applies the continuing violation doctrine to Section 1983 claims.[26] "To allege a continuing

---

[24] *Dean Witter*, 1998 WL 442456, at *6 (citations omitted).

[25] Pls.' Answering Br. 47 (quoting Compl. ¶ 76).

[26] *Gould v. Council of Bristol Borough*, 2014 WL 296944, at *1 (E.D. Pa. Jan. 27, 2014), *aff'd sub nom.*, *Gould v. Borough*, 615 F. App'x 112 (3d Cir. 2015); *see, e.g.*, *Cowell v. Palmer Twp.*, 263 F.3d 286 (3d Cir. 2001); *Centifanti v. Nix*, 865 F.2d 1422 (3d Cir. 1989); *Burnette v. City of Phila.*, 2003 WL 21293682, at *2 (E.D. Pa. Jan. 14, 2003).

violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful . . . practice and that at least one act falls within the applicable limitations period."[27]  "[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation," and "[t]he focus of the . . . doctrine is on *affirmative acts* of the defendants."[28]  However, "discrete [violations] are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[29]

Here, the affirmative acts of which Plaintiffs complain occurred over ten years ago when (1) Defendants assigned FST a large Special Assigned Area one day and took it away the next, and (2) Defendants gave FST a small Special Assigned Area and promised to assign FST a larger Special Assigned Area within a year, which never happened.  Plaintiffs also allege that DSP "frequently" assigns additional areas within the Troop 6 Area or the state to B & F and that DSP transferred Captains away from Troop 6 when they attempted to remedy Plaintiffs'

---

[27]  *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-66 (3d Cir. 2013).

[28]  *Cowell*, 263 F.3d at 293 (emphasis added); *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d. Cir. 1998).

[29]  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

grievances, but the Complaint fails to plead facts placing those affirmative acts specifically within the statute of limitations.

Further, allegations that Defendants are allowing an inequitable and non-uniform system to remain in place to this day exemplifies the "ill effects from an original violation" that the Third Circuit does not consider a continuing violation, rather than the affirmative acts on which the Third Circuit's analysis focuses. Thus, taking the well-pled facts of the Complaint and drawing all reasonable inferences therefrom in favor of Plaintiffs, I conclude Plaintiffs have not satisfied their burden of demonstrating that the continuing violation doctrine preserves their § 1983 claims.

## C. Plaintiffs' Unreasonable Delay Prejudiced Defendants

Finally, Plaintiffs' failure to file within the analogous statute of limitations prejudiced Defendants. Such prejudice arises primarily from the extent to which facts and circumstances change, witnesses retire or relocate, and memories fade over the course of fifteen years. For example, to defend against Plaintiffs' claim that the current system is discriminatory, Defendants would have to explain how Troop Area 6 evolved since 2001 and justify Approved Tower applications and area assignments during that period, which includes establishing the motivations and decision-making processes of unnamed officials. More specifically, Plaintiffs

plead that an unnamed person promised them a larger Special Assigned Area in 2004 and that multiple unnamed Captains at Troop 6 attempted to remedy the issue over the years. Defendants cannot fairly be expected to defend adequately against Plaintiffs' claims more than ten years after the analogous statutes of limitations ran. In addition, Plaintiffs seek damages for the entire fifteen-year period; had they filed suit before 2015, Defendants could have avoided significant losses by taking interim corrective action.[30] Accordingly, Plaintiffs' claims are barred by laches.

## V. CONCLUSION

Defendants established that the Complaint itself alleges facts that show it was filed too late, and Plaintiffs failed to carry their burden of pleading facts demonstrating that tolling applies. Therefore, Defendants' motion to dismiss is granted.

**IT IS SO ORDERED**.

Sincerely,

*/s/ Tamika Montgomery-Reeves*

Vice Chancellor

TMR/jp

---

[30] *See, e.g.*, *Fike v. Ruger*, 752 A.2d 112, 114 (Del. 2000) (holding that the plaintiffs' unreasonable delay in bringing its claims prejudiced the defendants by preventing them from avoiding significant losses).