## Ketterer, Appellant, *v.* Ketterer.

Argued November 20, 1946. Before Baldrige, P. J., Rhodes, Hirt, Reno, Dithrich, Ross and Arnold, JJ.

*David H. Kubert,* for appellant.

*Thomas S. Howland,* for appellee.

OPINION BY ARNOLD, J., December 11, 1946:

Libellant filed her libel in divorce a.v.m. on the ground of indignities in the words of §10 (f) of The Divorce Law of 1929, 23 PS 10. Respondent filed an answer and the master to whom the case was referred recommended a decree, but the court below sustained respondent's exceptions and dismissed the libel, and the libellant appealed.

The basis of the court's action seems to be (a) that the libellant's testimony and that of her witnesses was so general, vague and sometimes contradictory as not to be clear and satisfactory; and (b) that the respondent's testimony, uncorroborated, was worthy of belief. The court below did not stamp the testimony of the libellant and her witnesses as unworthy of belief.

The parties were married December 22, 1918, and the wife left her husband on November 9, 1943. In all of the testimony of the respondent, comprising 34 pages, there is no evidence of affection for his wife or for the two living children, Eleanor, aged 23, and Dolores, aged 14; nor, if the wife is to be believed, for the son, William R. Ketterer, Jr., who lost his life in the armed forces of the United States. The two surviving children live with the libellant, and the daughter, Eleanor, testified and fully corroborated her mother, the libellant.

The testimony of the libellant actually recounted the whole history of their married life which from the

beginning, by the fault of the respondent, was unhappy. The so-called generality of libellant's evidence exists, if at all, because of seeking to compress the story of twenty-five years of ill treatment. From the testimony of the libellant and her witnesses we are convinced that the respondent indulged in a calculated course of humiliation, oppression and domination of his wife. That testimony showed the respondent's lack of affection for his family, and that he conducted himself as though his only responsibility was to furnish bed and board. His failure to be a father to his own children could certainly not be justified by any alleged unkindness of his wife. The respondent's evidence shows he gave his children little of his time, his affection or his comradeship. Day after day and year after year he insisted upon quarreling with them and performing many acts calculated to humiliate and annoy. The testimony plainly showed his belief that the wife's only right was to work, and that the children's only privilege was to be quiet. Many of the allegations against him were undenied. Their daughter, Eleanor, testified that the respondent argued and fought over the slightest things, so that "there was never peace at any time"; that he required the children to spend most of their time sitting on chairs; that he constantly used profane and vulgar language; and that he allowed the children no company. She summed up the whole situation by saying: "There wasn't one peaceful day that I [23 years of age] can remember." A neighbor testified in corroboration as to the nagging and fighting by the husband, his use of profane language and his general "meanness." We think that the testimony of the libellant and her witnesses is not vague but is clear and satisfactory. The alleged contradictions in her testimony are as to money matters, and even these are explainable and not necessarily contradictory.

We have stated many times that the report of the master, who saw and heard the witnesses, is entitled to great weight, although it is, of course, not conclusive.

Of the respondent's testimony the master said: "Of course all of this testimony [libellant's] is denied by the Respondent. It was very evident to the Master watching the Respondent as he testified, that the probabilities of the truth of the testimony offered by the Libellant . . . [were with her] and that the Respondent's testimony was a weak attempt to meet the testimony of the Libellant and her witnesses. While testifying to some fact that he thought was hurtful to the Libellant, he would half close his eyes and leer at her . . . Throughout the whole course of his testimony he had a cold, sarcastic, leering mannerism that in itself was repulsive." Our examination of the respondent's testimony leads to the same conclusion reached by the master.

While the husband points to two letters which libellant received from some man known as "Lester", there is nothing in these letters which would sustain a charge of adultery, and since they were dated within six weeks of the wife-libellant leaving her husband, could not have furnished any excuse for the respondent's ill treatment of his wife for the preceding twenty-five years.

The son, William R. Ketterer, Jr., went into the armed forces of the United States in January, 1942. He met his death in the service in March, 1943. According to the wife and daughter the respondent did not even go to see him off. The respondent's allegation is that he could get no "relief" at his work (which was a sort of custodian "engineer" for a public school building), and that the son understood this. Some might think that under such circumstances a father would be with his son when he left, even though his job were at stake, especially where, as here, respondent's work was not connected with matters of national defense. The libellant told the respondent that she would not live with him after her son came back, but that, for the sake of the boy's morale, she did not want to break up the home. The separation took place the November following the son's death. The respondent's testimony indicates some

feeling on his part because the boy's insurance, both governmental and private, was payable to his mother, so that the respondent got none of it.

From an independent examination of the record we believe that the master was right in his recommendation, and that the court below was in error in dismissing the libel. The testimony on behalf of the libellant, in our opinion, clearly shows a long course of humiliating and degrading conduct practiced by the respondent upon her, whereby her condition was rendered intolerable and life burdensome; and that it consisted of habitual contumely, studied neglect, disdain, abusive language, and manifested settled hate and estrangement on the part of the respondent.

The decree of the court below is reversed and the record is remitted with directions that a decree be entered granting the libellant, Evelyn Ketterer, a divorce a. v. m. from her husband, William F. Ketterer.