## Oleska v. Oleska

*John C. Stern,* for libellant.
*Lawrence M. Sebring,* for respondent.

McCREARY, P. J., March 25, 1947.—In the above-entitled case libellant filed an action for divorce against respondent, alleging as grounds therefor: (1) cruel and barbarous treatment, and (2) indignities to the person. The matter was duly referred to Louis Klein, Esq., as master, under the provisions of section 54 of The Divorce Law of May 2, 1929, P. L. 1237. After taking the testimony of the witnesses before an official court stenographer, the master filed his report recommending that a decree in divorce be granted by the court on the grounds of indignities to the person, but finding that there is not sufficient testimony on which to base a decree on the grounds of cruel and barbarous treatment. Respondent filed exceptions to the master's report, setting forth that the master erred in making his tenth finding of fact, which reads as follows:

"10. That the evidence does show that respondent did subject libellant to a course of abusive treatment which was of such a nature as to render libellant's condition intolerable and her life burdensome."

And to the fifth conclusion of law of the master, which reads as follows:

"5. That the evidence is sufficient to establish that respondent offered such indignities to the person of libellant as to render her condition intolerable and life burdensome."

The master made 10 findings of fact, eight of which are findings as to the names of the parties, the name of libellant prior to her marriage, the time and place at which the parties were joined in marriage, and the name of the minister who performed the marriage ceremony, the birth of a child, Maureen Rose Oleska, the residence of libellant and respondent at the time of marriage, where they first went to live and cohabit as husband and wife, and where they were living and cohabiting at the time of their separation, and the fact that libellant has been a resident of the County of Beaver for a period of more than one year prior to the filing of the libel, and lastly, that the present residence of respondent is Linmar Place, Aliquippa, Beaver County, Pa. There is not a single finding of fact in the master's report relating to the details of the married life of the parties on the basis of which the master concluded that libellant was entitled to a divorce on the grounds of indignities to the person.

The matter of the exceptions came on for argument before the court en banc, and we now have for consideration the determination of the question as to whether the exceptions as filed by respondent's attorney should be sustained or overruled.

By reason of the state of the record, we are compelled to refer the whole matter back to the master for the purpose of making specific findings of fact in

detail, on a basis of which he reaches the conclusion that libellant is entitled to a divorce on the grounds of indignities to the person. It is not sufficient for the master to state in his findings of fact that the evidence is sufficient on which to base a conclusion that respondent is guilty of indignities to the person, without stating the facts which he finds to be true to authorize such a conclusion. The very purpose of the appointment of a master in divorce, and the reference of the case to him is to aid the court. But if, as here is attempted, the court in the end is to be left to consider each finding of fact and every conclusion of law of the master as an original proposition, and to search through many pages of testimony for every single piece of evidence bearing upon many such propositions, certainly our reference to the master was most unhappy, for it neither helped enlighten us nor facilitated our labors. In fact we would have been far better off had we made no reference, but instead required the parties to come before us, so that we might have seen them and observed their manner of testifying, and compelled them to produce their evidence in open court where we ourselves could have heard the witnesses. Then, at least, the litigants would not have been judicially invisible; or, since the Goddess of Justice is always portrayed blindfolded, the words of the witnesses would not have been judicially inaudible: Hallman v. Hallman, 42 Montg. 173.

The report of a master in divorce should be framed according to the rules for the preparation of reports of masters in chancery, and hence should contain a specific finding of the existence of every element necessary for the establishment of a case by libellant: Pomeroy v. Pomeroy, 11 Dist. R. 299; Thornton v. Thornton, 3 D. & C. 361; Crouse v. Crouse, 26 Dauphin 363; Buela v. Buela, 27 Dauphin 84; Scheffey v. Scheffey, 4 D. & C. 716; Young v. Young, 11 Lehigh 14; Romig v. Romig, 11 Lehigh 301.

In every action of divorce referred to a master, he should, in addition to his other findings of fact, make a specific finding with respect to the ground of divorce laid in the libel. This requirement is essential, because a divorce may be granted only upon proof of the identical act charged in the libel as the foundation for the divorce sought: Scheffey v. Scheffey, supra.

A report of a master in divorce ought to contain first, a definite finding of the facts on his part, and second, the conclusions of law he draws from the facts so ascertained by him. A mere recital of the evidence, even if coupled with the opinion of the master on the testimony, is not sufficient. So, also, where the cause of action is based on indignities to the person, the finding of the master as to the course of conduct which, in his opinion, constituted indignities to the person and showed a state of estrangement and settled hate on the part of the respondent, must be set forth in detail as separate and specific findings of fact.

It is the duty of a master in divorce to hear the testimony, to transcribe the evidence, or have it properly transcribed, and to find and report the facts. Holding an office analogous to that of a master in chancery, he acts in a judicial capacity. He must weigh the evidence, determine what facts are established by testimony, formulate the facts into findings, draw the appropriate inferences from the facts found, and then report the conclusions of law to which he is led. He can neither shirk nor delegate to another, nor pass back to the court the performance of this important function, and hence his work is not well done unless he so draw his report as to enable the court, without more labor than the reading of the record, to enter a final decree: Young v. Young, supra.

A mere loose, running recapitulation of the testimony, which the court always can, and this court invariably does read, is not tantamount to findings of fact.

On the contrary, such findings must consist of clear, precise, positive, distinct and explicit statements, growing right out of the evidence. Since the legal conclusions determining the real issue involved have to be deduced from the facts, and the inferences therefrom drawn, the court should be specifically advised by the master of the facts upon which rest his conclusions: Buela v. Buela, supra.

A discussion of the testimony heard before the master, without a definite statement by him of the facts he finds from the evidence, is not a finding of fact. Such a recital of the testimony, if requisite at all, belongs to that portion of the report called "Discussion", wherein should be stated the reasons moving the master to admit or reject certain testimony, or impelling him to find, or not to find certain facts or inferences. In the discussion should be stated the reasons, also, causing the master to reach the conclusions of law which, like his findings of fact, should form a part of the report entirely separate from the discussion. For the master to place a finding of fact or a conclusion of law in his discussion, is not dissimilar to the dropping of a needle in a haystack; so much so, in fact, that, of itself, it is sufficient cause for the recommitment of the report. The reason being, as already seen, that a party desirous of excepting to the report must file a separate exception to every finding and conclusion conceived to be injurious; a course of procedure rendered almost impossible when the facts are not found, or if found, are but vaguely stated; or, if found with definiteness, are scattered hither and yon through the report: Crouse v. Crouse, supra; Young v. Young, supra.

A divorce case is no different from any other proceeding referred to a master, in that the acting party is entitled to a finding of every fact he has proven by the weight of the evidence to the satisfaction of the

master. This is true even though such findings in no wise affect the master's finally formulated conclusions of law: Thornton v. Thornton, supra.

Masters in divorce will do well to bear in mind that no longer are they merely examiners, but that for nearly half a century they have been expected to do more than merely relieve the court of the drudgery of hearing and taking testimony. By virtue of the provisions of section 1 of the Act of March 10, 1899, now The Divorce Law of May 2, 1929, P. L. 1237, sec. 64, in all divorce proceedings, except upon answer demanding a trial by jury a master was appointed not only to take the testimony, but to return the proceedings together with a report and his opinion of the case, and this section of the act has been construed to compel the master to frame his report after the manner of a report of a master in chancery. While it is true that the findings of fact of a master in divorce do not have the force and effect of those found in the report of a referee in a civil case, or the report of a master in chancery, much less those contained in the opinion of a judge in the trial of a case without a jury, or those embodied in the adjudication of a chancellor in equity, nevertheless, as in no divorce case can a final decree be entered in the absence of the finding of every essential fact, it is of the utmost importance that in every contested case the facts be found with extreme care and thoroughness. Someone in the court of original jurisdiction must so find the facts, and nothing unreasonable appears in the belief the legislature intended that, in the first instance, this duty should fall upon the one who sees the parties eye to eye and hears the witnesses face to face: Thornton v. Thornton, supra.

We are aware of the fact that the Superior Court of Pennsylvania, in the case of Snyder v. Snyder, 141 Pa. Superior Ct. 533, declared that the findings of a master in divorce need not be in the form required

of a master in chancery, since a master in divorce acts in an advisory capacity only, and his findings do not give preponderating weight to, nor impose an additional burden on a party to the action. Nevertheless, we are also cognizant of the fact that in that same case the Superior Court of Pennsylvania declared that the form of the report is for each local court to determine by court rule or otherwise. In that case the Superior Court said that the proper practice is to appeal to the discretion of the lower court by moving to have the case resubmitted to the master for a new or amended report, in the event that the master does not make specific findings of fact on a basis of which he concludes that the cause of divorce has been made out.

Our local rules of court do not prescribe the form of masters' reports. A committee was recently appointed by the local bar association for the purpose of preparing rules for guidance of litigants, attorneys and masters in divorce proceedings. It is to be hoped that this committee will include among their rules one requiring the master to set forth in detail the facts upon which he relies for the recommendation which he makes to the court.

See also Weber v. Weber, 7 Monroe 40.

In the case we now have under consideration the learned master made not a single finding of fact relating to the alleged cause of divorce, except the alleged finding of fact no. 10, set forth verbatim on page 1 of this opinion. This obviously is not a finding of fact but is a statement of a conclusion by the master. It is true that under the heading "Discussion" in his report the master set forth what the various witnesses "testified to", but, as stated above, we could ascertain what the various witnesses "testified to" by reading the transcript of the testimony. What the court is interested in, as far as the master's report is concerned, is what the master, who saw and heard the witnesses

and who therefore is in a position to judge of their credibility, finds the facts are, not merely what the witnesses testified to. We are not bound by these findings, but on questions of fact the report of the master, who saw and heard the witnesses, is entitled to great weight: Ketterer v. Ketterer, 160 Pa. Superior Ct. 22. We are entitled to know what the master finds the facts to be.

We therefore make the following

### Order

Now, March 25, 1947, the above-entitled matter is referred back to the master for action not inconsistent with this opinion; in the meantime the exceptions filed by respondent are dismissed, with leave to renew them or file additional exceptions after the master has filed his supplemental report.